IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHRISTINA GRIGGS, | § |
| | § |
| Plaintiff, | § |
| | § Civil Action No. 3:10-CV-1291-D |
| VS. | § |
| | § |
| CREDIT SOLUTIONS OF AMERICA, INC., | § |
| | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

In this putative class action transferred to this court from the Eastern District of Missouri, the court must decide whether plaintiff has stated claims against defendant for violating the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.* (2001), and for engaging in the unauthorized practice of law, in violation of Mo. Rev. Stat. § 484.020 (2004). The court holds that plaintiff has failed to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b) with respect to her MMPA claim, but that she has stated a claim for the unauthorized practice of law. The court therefore grants in part and denies in part defendant's motion to dismiss, and it grants plaintiff leave to replead.

I

Plaintiff Christina Griggs ("Griggs") brings this action on behalf of herself and a putative class against defendant Credit Solutions of America, Inc. ("CSA"). CSA is a debt negotiation and

settlement service that negotiates with creditors to attempt to reduce its clients' debts. Griggs, a CSA client, filed this lawsuit in Missouri state court and later sought class certification. CSA removed the case to the Eastern District of Missouri, which transferred the case to this court. Griggs alleges that CSA is liable for violating the MMPA and for engaging in the unauthorized practice of law. She seeks damages for herself and seeks to represent a class of all CSA customers in the state of Missouri.

Griggs essentially alleges that CSA's entire business model is flawed and violates Missouri law. She avers that customers who use CSA's services end up financially worse off, and that CSA's services do not result in overall debt reduction. Griggs alleges on behalf of the putative class that CSA routinely overstates the benefits of its services and fails to inform customers of likely negative results (i.e., reduced credit worthiness, increased penalties, and possible lawsuits by creditors). Griggs also posits that CSA illegally engages in the practice of law when it advises clients about when to pay (or not to pay) creditors and negotiates with creditors on its clients' behalf.

Before this case was transferred, CSA filed the instant motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The motion is ripe for decision in this court following the transfer.

II

A

In deciding a Rule 12(b)(6) motion, the court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 698 (8th Cir. 2008).[1]  Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although "the pleadings standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when

---

[1]Because this case was transferred under 28 U.S.C. § 1404(a), this court will apply the law of the transferor court. *See Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) ("[T]he law applicable to a diversity case does not change upon a transfer initiated by a defendant.").  This includes choice-of-law rules.  *Id.* at 525 ("[T]he choice-of-law rules should not change following a transfer initiated by a defendant.").  The court therefore applies Eighth Circuit and Missouri law, including Missouri choice-of-law rules, as would the transferor district court for the Eastern District of Missouri.

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

Under Rule 9(b), a heightened pleading standard applies to claims alleging fraud. *See Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b).

B

The parties apparently both agree that Missouri law applies in this case. Griggs's claims are each based on an alleged violation of a Missouri statute rather than on a common law cause of action. The parties appear to assume in their briefing that CSA would be liable to Griggs and the putative class if these state laws were violated. The court will assume, without deciding, that Missouri

law controls.

The court notes, however, that the contract between Griggs and CSA contains a forum-selection and choice-of-law clause that purports to make any dispute between the parties that arises out of their agreement subject exclusively to the laws of Texas. *See* D. Br. Ex. A ¶ 11.[2] The Eastern District of Missouri cited this clause in support of its decision to transfer the case to this district. *See Griggs v. Credit Solutions of Am., Inc.*, 2010 WL 2653474, at *2 (E.D. Mo. June 29, 2010). But that court also questioned "whether Plaintiff and the putative class members will be able to assert these [Missouri] state law claims, given that Defendant's contracts contain choice-of-law provisions directing that Texas law applies," and it noted that "the initial question [in the case] will be whether to enforce the choice-of-law clause directing that Texas law applies." *Id.* at *2, *4. The parties do not mention this clause in their briefing. Therefore, the court will assume that Missouri substantive law applies for purposes of

---

[2]The clause states:

> In the event of any dispute regarding this AGREEMENT including but not limited to service fees and costs, [Griggs] and [CSA] agree that venue of resolution shall be in the county and city of Dallas, Texas. Both [CSA] and [Griggs] agree that the laws of the State of Texas shall govern any disputes arising from this AGREEMENT.

D. Br. Ex. A ¶ 11.

deciding CSA's motion to dismiss.

III

The court first considers whether Griggs has sufficiently pleaded her claim under the MMPA.

A

The MMPA authorizes private civil lawsuits by any person who purchases services "and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice" that violates the statute. Mo. Rev. Stat. § 407.025.1. Behavior that violates the statute is defined as "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . . in or from the state of Missouri." Mo. Rev. Stat. § 407.020.1. "Merchandise," within the meaning of the statute, includes services, Mo. Rev. Stat. § 407.010(4), and CSA does not contest that its debt-negotiation services are considered "merchandise" under the MMPA. A suit may seek actual damages, with punitive damages and attorney's fees available at the discretion of the court. Mo. Rev. Stat. § 407.025.1. Moreover, "if the unlawful method, act or practice has caused similar injury to numerous other persons," the MMPA authorizes a valid plaintiff (i.e., a plaintiff who has personally

"suffer[ed] an ascertainable loss of money or property") to bring a class action. Mo. Rev. Stat. § 407.025.2. The statute addresses how such a class action is to proceed and what remedies are available. *Id.*

Griggs purports to bring a class action under § 407.025.2. CSA asserts in its motion to dismiss that Griggs's first amended class action petition ("petition"), the live pleading in this case, fails to establish that she is a proper plaintiff. Essentially, CSA argues that Griggs has not pleaded sufficient harm that she herself suffered as a result of CSA's allegedly improper practices. It posits that the petition only briefly and summarily touches on Griggs's individual interaction with CSA, while focusing primarily on generalized "information and belief" accusations about allegedly wrongful acts performed by CSA in relation to unidentified CSA "customers." CSA also asserts that the heightened pleading requirements of Rule 9(b) apply to Griggs's MMPA claim because it sounds in fraud. Griggs apparently disputes that Rule 9(b) applies and generally maintains that the petition is adequate to state an MMPA claim on which relief can be granted.

B

The court first examines whether the heightened pleading standard of Rule 9(b) applies to Griggs's MMPA claim. When a plaintiff alleges a systemic pattern of fraud by the defendant,

> neither [the Eighth Circuit] nor Rule 9(b)
> requires [a plaintiff] to allege specific
> details of *every* alleged fraudulent claim
> forming the basis of [the plaintiff's]
> complaint. However, to satisfy Rule 9(b)'s
> particularity requirement and to enable [a
> defendant] to respond specifically to [the
> plaintiff's] allegations, [the plaintiff] must
> provide *some* representative examples of their
> alleged fraudulent conduct, specifying the
> time, place, and content of their acts and the
> identity of the actors.

*Joshi*, 441 F.3d at 557 (emphasis in original). Courts in the Eighth Circuit have applied this formulation of Rule 9(b)'s heightened pleading requirement to claims alleging a "systematic scheme to defraud" under the MMPA. *See, e.g., Blake v. Career Educ. Corp.*, 2009 WL 140742, at *3 (E.D. Mo. Jan. 20, 2009) (rejecting plaintiff's argument that MMPA claims are subject to lower pleading standards than common law fraud claims). "When reviewing claims under the MMPA, a number of district courts have applied the heightened standard of Rule 9(b)." *Metcalf v. Lowe's Home Ctrs., Inc.*, 2010 WL 1221855, at *2 (E.D. Mo. Mar. 30, 2010) (collecting cases). This is because "Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims." *Baryo v. Philip Morris USA, Inc.*, 435 F.Supp.2d 961, 968 (W.D. Mo. 2006); *see also Joshi*, 441 F.3d at 556 (applying Rule 9(b) pleading standards to claims under the federal False Claims Act); *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1536 (E.D. Mo. 1997), *aff'd*, *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th

Cir. 1999).

The court therefore holds that the heightened pleading standard of Rule 9(b) applies to Griggs's MMPA claim. Accordingly, Griggs is required to plead "with particularity the circumstances constituting fraud or mistake," Rule 9(b), and she must provide some representative examples of CSA's alleged fraudulent conduct, specifying the time, place, and content of its acts and the identity of the actors, *see Joshi*, 441 F.3d at 557.

C

Griggs has not adequately pleaded her MMPA claim. The statute requires that, for Griggs to bring a suit on behalf of a class, she must have suffered "an ascertainable loss of money or property, real or personal, as a result of the use or employment," Mo. Rev. Stat. § 407.025.1, by CSA of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement" of CSA's services, *id.* § 407.020.1. Griggs has failed to do so.

The petition provides a confusing account of what party allegedly suffered harm due to CSA's actions. In some places, Griggs refers to "plaintiff," while in others she uses the words "plaintiff and class," or "consumers," or "customers" of CSA. The petition contains scant information as to how CSA violated the statute in its dealings with Griggs. Initially, she alleges that

CSA "promised to reduce [Griggs's] debts significantly in exchange for a fee." Pet. 2. This statement misconstrues the contract between the parties, and attempts to place duties on CSA that are not found in the agreement. The contract, which is attached to the petition, does not provide that CSA "promises to significantly reduce" Griggs's debts. Rather, the agreement states that CSA will assist Griggs in the "resolution of outstanding debts through negotiation and settlement" with her creditors. D. Br. Ex. A ¶ 3. Griggs fails to plead any facts that support the assertion that CSA "promised to significantly reduce" her debt.

The other allegations of the petition that relate specifically to Griggs fail to demonstrate that she can maintain a suit under the MMPA. She asserts that CSA failed to disclose a number of material facts about its "operations, success rates, failure to obtain a proper bond to conduct business in Missouri and other states, and a number of other factors," and that it required her to execute a limited power of attorney to negotiate her debts. Pet. 2. But Griggs does not adequately specify what CSA should have disclosed. Griggs posits that she paid fees to CSA for some unspecified number of months—as set forth in the contract—but never actually received any benefit, and that CSA has not refunded her money. She concludes by alleging that her debts remain unsettled and that she is worse off financially than she was before contacting CSA. As now pleaded, her claim is more akin to a

complaint based on dissatisfaction with the results of CSA's negotiation efforts than it is a claim of deception, fraud, or other conduct that the MMPA proscribes.

Following the few paragraphs that describe Griggs's circumstances, the petition sets out a much longer list of allegations, based on information and belief, regarding harms suffered by unnamed "consumers" or "customers" of CSA. Although Griggs posits in her response brief that any assertion about "consumers" should be understood to mean "plaintiff and class," the petition cannot be fairly read to plead a violation of the MMPA under the heightened pleading standard of Rule 9(b).

"To get past the pleadings stage, however, Rule 9(b) requires a plaintiff to plead the equivalent of the first paragraph of any newspaper story[.]" *Drobnak v. Andersen Corp.,* 561 F.3d 778, 784 (8th Cir. 2009) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997)).

> Rule 9(b) requires that circumstances constituting fraud be pleaded with particularity. We interpret this rule in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.

*Id.* at 783 (citation and quotation marks omitted) (citing Rule 9(b) and quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). Likewise, "[a] plaintiff bringing a

claim for fraudulent omission must allege what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *In re Gen. Motors Corp.*, 966 F. Supp. at 1536. Griggs's generalized assertions[3] do not satisfy these requirements.

The petition also fails to plead facts that, taken as true, state a plausible claim that the alleged misrepresentations or omissions are violations of the MMPA, which only covers "material fact[s] in connection with the sale or advertisement" of CSA's services.

The MMPA requires that, to maintain a class action, the representative plaintiff must herself have suffered an identifiable harm as a result of the defendant's violation of the statute. But Griggs fails to adequately plead that she suffered any harm or that CSA's actions in her case violated the MMPA. Although Griggs makes broad, generalized accusations that CSA has misled the class, she does not adequately allege any instance of specific "ascertainable loss of money or property" as to herself (or any other individual). The petition also fails to plead that the alleged

---

[3]Her allegations include the following: the CSA business model is "inherently flawed"; CSA fails to disclose that some creditors refuse to negotiate debts; CSA misrepresents its ability to negotiate debts and the risk of entering the program; and (upon information and belief) most CSA customers do not see a reduction in debts.

misrepresentations are material, within the meaning of the statute.

Griggs's petition does not satisfy the heightened pleading standard of Rule 9(b), and it therefore fails to state a claim under the MMPA. CSA's motion to dismiss this claim is granted.

IV

The court turns next to Griggs's claim that CSA has engaged in the unauthorized practice of law, and it holds that she has adequately pleaded this claim.

Missouri law prohibits the "practice of law" or engaging in a "law business" by anyone other than a licensed attorney. Mo. Rev. Stat. § 484.020.1. This prohibition covers work including "appearance as an advocate in a representative capacity" or "advising or counseling . . . as to any secular law." Mo. Rev. Stat. § 484.010. Any person who pays for such unauthorized service is permitted to file suit seeking treble damages, as measured by the amount paid for the improper legal work. Mo. Rev. Stat. § 484.020.2.

Unlike Griggs's MMPA claim, the heightened pleading standard of Rule 9(b) does not apply to her claim that CSA engaged in the unauthorized practice of law. Although her petition contains generalized and vague allegations, she has pleaded a plausible claim. Griggs identifies several actions by CSA that could conceivably constitute the practice of law: advising clients to stop paying certain debts; acting as a representative on behalf of

its clients towards their creditors; and counseling clients regarding federal law and how to proceed with their debt obligations. The petition is sufficient to enable the court to reasonably infer that CSA is liable for the conduct charged.

Accordingly, because the claim is adequately pleaded to survive a Rule 12(b)(6) challenge, CSA's motion to dismiss is denied in this respect.

* * *

The court holds that Griggs has failed to state a claim under the MMPA, and it grants CSA's motion in this respect. Griggs may file an amended complaint within 21 days of the date this memorandum opinion and order is filed.[4] The court otherwise denies CSA's motion.

**SO ORDERED.**

July 28, 2010.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[4]Griggs filed her petition in Missouri state court before the case was removed, and the court is concluding under Rule 9(b)—a federal procedural rule—that her petition is insufficient. To ensure that she is afforded a fair opportunity to plead a claim under the heightened pleading standard of Rule 9(b), the court will allow her to replead.